

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## INFORMAL BRIEF

No.    24-1094,      Phillip O'Briant v. Nestle Dreyer's Ice Cream Company
1:18-cv-01048-ELH

## 1. Declaration of Inmate Filing

An inmate's notice of appeal is timely if it was deposited in the institution's internal mail system, with postage prepaid, on or before the last day for filing. Timely filing may be shown by:

- a postmark or date stamp showing that the notice of appeal was timely deposited in the institution's internal mail system, with postage prepaid, or
- a declaration of the inmate, under penalty of perjury, of the date on which the notice of appeal was deposited in the institution's internal mail system with postage prepaid. To include a declaration of inmate filing as part of your informal brief, complete and sign the declaration below:

---

**Declaration of Inmate Filing**

Date NOTICE OF APPEAL deposited in institution's mail system: _____

I am an inmate confined in an institution and deposited my notice of appeal in the institution's internal mail system. First-class postage was prepaid either by me or by the institution on my behalf.

I declare under penalty of perjury that the foregoing is true and correct (see 28 U.S.C. § 1746; 18 U.S.C. § 1621).

Signature: _____    Date: _____

[**Note to inmate filers**: *If your institution has a system designed for legal mail, you must use that system in order to receive the timing benefit of Fed. R. App. P. 4(c)(1) or Fed. R. App. P. 25(a)(2)(A)(iii).*]

---

## 2. Jurisdiction

Name of court or agency from which review is sought: *U.S. Court of Appeals for the 4th Circuit*

Date(s) of order or orders for which review is sought:
*30 November 2018*

## 3. Issues for Review

Use the following spaces to set forth the facts and argument in support of the issues you wish the Court of Appeals to consider. The parties may cite case law, but citations are not required.

**Issue 1.**      *See attached documents*

RECEIVED
2024 FEB 16 P 3:06
U.S. COURT OF APPEALS
FOURTH CIRCUIT

**Supporting Facts and Argument.**

*see attached documents!*

**Issue 2.**

**Supporting Facts and Argument.**

**Issue 3.**

**Supporting Facts and Argument.**

**Issue 4.**

**Supporting Facts and Argument**

4. **Relief Requested**
Identify the precise action you want the Court of Appeals to take:

5. **Prior appeals (for appellants only)**
A. Have you filed other cases in this court? Yes [ ] No [ ]    *see attached documents.*

B. If you checked YES, what are the case names and docket numbers for those
appeals and what was the ultimate disposition of each?

*Philip Ont*
Signature
[Notarization Not Required]

*Philip O'Briant*
[Please Print Your Name Here]

<div align="center">

**CERTIFICATE OF SERVICE**
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

</div>

I certify that on ___13 February___ I served a copy of this Informal Brief on all parties,
addressed as shown below: *2024*

*Philip Ont*
Signature

<div align="center">

**NO STAPLES, TAPE OR BINDING PLEASE**

</div>

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

### INFORMAL BRIEF:

**Case No.** 24-1094

**Jurisdiction Court:** 4th Circuit Court of Appeals of United States

**District court No.** 1:18-cv-01048-ELH

**Date(s) of order or orders for which review is sought -** 30 November 2018

**Issues for review:** stare decisis – civil contempt by judge – unconstitutional acts

**Issue 1:** Whether or not judge Hollander disobeyed an order given by a higher court?

Yes, judge Hollander did disobey an order given from the U.S. Court of Appeals for the 4th Circuit. On 30 November 2018, the U.S. court of appeals for the 4th circuit remanded petitioner's case back down to the district court, and ordered judge Ellen Lipton Hollander to decide on petitioner's section 1981 claim. Judge Hollander reopened the case on 4 December 2018, but did not decide on petitioner's section 1981 claim. Judge Hollander allowed petitioner's case to remain open for two years before closing it without deciding on petitioner's section 1981 claim as ordered by the 4th circuit. Judge Hollander closed petitioner's case on 7 July 2020.

### Facts

It is a fact that judge Hollander disregarded stare decisis. It is a fact that judge Hollander ignored the decision of the fourth circuit on 30 November 2018. It is a fact that judge Hollander did not decide on petitioner's section 1981 claim. It is a fact that judge Hollander dismissed petitioner's pro se complaint based on the lie his complaint was filed under Title VII. It is a fact that judge Hollander was aware that petitioner's pro se complaint was filed under section 1981. It is a fact that judge Hollander did deny petitioner his right to due process of law in the fifth amendment when she stopped petitioner from presenting evidence to support his allegations. It is a fact that judge Hollander denied petitioner his right to equal protection of the law in the fourteenth amendment when she stopped petitioner from providing evidence to support his claims. It is a fact that judge Hollander violated federal statute **18 U.S. Code § 401 (1) (2) and (3).** It is a fact that judge Hollander violated federal statute **16 Am. Jur. 2d, sec. 177 late 2d, sec. 256.** It is a fact that judge Hollander committed misconduct in her official capacity as judge, which violated **Article III, § 1,** of the constitution.

### Evidence

Petitioner's evidence is the original pro se filed with the court on 11 April 2018. (**exhibit 1**) Petitioner's believes that his original complaint will confirm that his complaint was filed under section 1981, and not Title VII. Petitioner also provides judge Hollander's order dated 7 July 2020, dismissing his section 1981 claim as evidence. (**exhibit 2**) Petitioner believes that judge Hollander's order will show that she never decided for his section 1981 claim based on bald assertions. Petitioner finally provides evidence

of the order from the 4th circuit dated 30 November 2018 remanding his case back down to the district court, and ordering judge Hollander to decide on petitioner's section 1981 claim. (**exhibit 3**)

<div align="center">**Legal Analysis**.</div>

**Stare decisis** is the principle of binding precedent, a decision of a higher court is binding on a lower court: the decision must be followed, and during a trial, the judges must refer to existing precedents.

**18 U.S. Code § 401** is a federal statute that provides that a court of the United States shall have the power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as – (1) misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2) misbehavior of any of its officers in their official transactions; and (3) disobedience or resistance to its lawful writ, process, order, rule, or command.

**16 Am. Jur. 2d, sec. 177 late 2d, sec. 256** states that any unconstitutional act of an official will at least be a violation of the oath of that official to execute the duties of his office, and therefore grounds for his removal from office. No official immunity or privileges of rank or position survive the commission of unlawful acts. If it violates the rights of individuals, it is also likely to be a crime, and the militia duty obliges anyone aware of such a violation to investigate it, gather evidence for a prosecution, make an arrest, and if necessary, seek an indictment from a grand jury, and if one is obtained, prosecute the offender in a court of law.

<div align="center">**Unconstitutional acts committed by judge Hollander.**</div>

The first unconstitutional act committed by judge Hollander happened when she dismissed petitioner's pro se complaint on 17 April 2018. It was dismissed because she determined the claim was time-barred under Title VII Civil Rights Act of1964. Petitioner appealed the erroneous decision because he filed his pro se complaint under section 1981 and not Title VII. Judge Hollander corrected her error, reopened petitioner's case, and ordered the sheriff to effectuate service on the defendants with summonses and copies of the complaint.

The second unconstitutional act committed by judge Hollander was her denial of petitioner's motion for summary judgment, and the dismissal of his complaint a 2nd claiming it time-barred under Title VII Civil Rights Act 1964 on date 9 July 2018. Judge Hollander did not correct her error and the case was transferred to the U.S. court of appeals for the 4th circuit for appeal.

The third unconstitutional act committed by judge Hollander happened after the 4th circuit decided to remand the case back down to the district court and ordered judge Hollander to decide on petitioner's section 1981 claim on 30 November 2018. Judge Hollander reopened the case on 4 December 2018 and closed the case on 7 July 2020, without deciding on petitioner's section 1981 claim.

**Relief Requested**

Petitioner demands for the court honor their legal duties they are bound to constitutionally.
Petitioner is entitled to relief. Petitioner demands that relief be provided by the court. Petitioner
was wrongfully terminated due to know fault of his own since 23 May 2014. Petitioner has been
denied the right to file lawsuits and present evidence to support his claims. Petitioner demands for
judge Hollander to be held accountable under the law for committing civil contempt. Petitioner
demands for a decision on his section 1981 claim.

**Other appeals filed with the 4th Circuit**.

**Case Name:** O'Briant v. Hogan, 18-2443

**Decision:** Affirmed lower court's decision

**Case Name:** O'Briant v. Rhodes, et al., JFM-17-1050

**Decision:** Affirmed lower court's decision

Phillip O"Briant

433 Drew Street

Baltimore, Maryland 21224

443.314.2958

obriantphil@gmail.com

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

PHILLIP O'BRIANT

433 Drew Street

Baltimore, Maryland 21224

     Plaintiff,

v.

NESTLE DREYER'S ICE CREAM

9090 Whiskey Bottom Road

Laurel, Maryland 20793

     Defendant,

**Civil Action No:**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Phillip O'Briant ("Plaintiff" or "Mr. O'Briant"), an African-American male, U.S. citizen residing in the State of Maryland, brings forth this legal action against defendant Nestle Dryer's Ice Cream ("the employer"), located at 9090 Whiskey Bottom Rd., Laurel, Maryland 20723; and the following employees: Kelli Quinn, Lanik McIntyre, Caitlin Berman, Terrence Murray, Linda Hastie, Lisa Neasom, Bill Woods and Dave Barbour, pursuant to 42 U.S.C. 1981 ("Section 1981"), to redress race discrimination and retaliation that caused the unlawful termination of his employment.

## STATEMENT OF FACTS

Plaintiff began his employment with defendant on 13 January 2014, as an Ice Cream Maker 1, at a starting pay rate of 13.80. (See Exhibit 1). While satisfying his duties as an ice cream maker, plaintiff's Supervisor Kelli Quinn, a white female, began making racial comments about plaintiff being black with a white man's name, and that she liked Africans more than African-Americans because they valued education more. The comments escalated to threats of his job security which made the work environment hostile and uncomfortable for plaintiff to perform his work duties on an excellent level.

Plaintiff exercised his 1st Amendment free-speech right that is protected under the U.S. Constitution, to complain about harassment from Ms. Quinn to his Human Resources Manager Lanik McIntyre, on date 11 March 2014. Ms. McIntyre scheduled a meeting to discuss Ms. Quinn's misconduct for the 13th of March. Ms. McIntyre did not appear for the important meeting. Instead, she sent HR Generalist Caitlin Berman, a white female, in her place to resolve matters. Ms. Berman did not take any corrective actions to resolve the racial comments being made against plaintiff or for the job security threats from Ms. Quinn during the meeting. *Mt. Healthy City Sch. Dist. v Doyle.* (See Exhibit 2).

## Retaliatory Act 1

On or about 23 March 2014, Ms. Quinn gave plaintiff a Final Written Warning corrective action document that was approved by Linda Hastie, a white female, for leaving work early on 11 March 2014; and calling out due to inclement weather on 17 March 2014. (See Exhibit 3).

According to defendant's Attendance Policy documents... if any employee leaves work before completion of their shift: the employee will receive a ½ point; and if any employee misses a schedule day from work, s/he will receive 1 point. (See Exhibit 4).

In total, plaintiff had 1 ½ points. To receive a Final Written Warning corrective action, plaintiff would have to have a total of 4 points. The corrective action required for 1 ½ points would have been "counseling" or "verbal warning." Defendant intentionally increased plaintiff's points in retaliation for exercising his free-speech right to complain of workplace harassment and race discrimination from his supervisor. (See Exhibit 5).

Plaintiff signed the unjustified corrective action approved by management under duress, and agreed to meet the requirements under the agreement which was to not be tardy, leave early or call out for any reasons for 32 days expiring on 23 April 2014.

## Retaliatory Act 2

While satisfying the requirements of the unjustified corrective action, plaintiff was confronted by Terrence Murray and Kelli Quinn, on 21 April 2014, and informed that management decided to extend his 90-day probationary period. Plaintiff explained to Mr. Murray and Ms. Quinn that his probation was completed on date 12 April 2014, and he was no longer on probation. Mr. Murray and Ms. Quinn informed plaintiff that they had the authority to extend his probationary time regardless of him completing the 90-day probationary period.

Plaintiff signed the unjustified extended probation document under the duress agreeing that he would use his card to swipe in and out correctly, meet with Ms. Quinn every Monday and complete his weekly friends helping friends' paperwork for the next 30 days ending on 20 May 2014. (See Exhibit 6).

**Retaliatory Act 3**

Plaintiff was meeting the requirements of the unjustified extended probation up until 15 May 2014, when he was harassed by Lisa Neasom, a black female employee, who aggressively snatched company property from his hands as she yelled obscenities at him because he would not participate in a shift revote about the new shift changes for Line 11.

Plaintiff reported the incident to Supervisor Rodney Davis. Mr. Davis took plaintiff and Ms. Neasom to meet with Caitlin Berman and Bill Woods. Ms. Berman decided to only meet with Ms. Neasom alone without plaintiff being present. Mr. Woods met with plaintiff and determined, after listening to the facts, that plaintiff should not be harassed for not wanting to sign an employee based document for the company shift changes. Plaintiff informed Mr. Woods that he did not feel comfortable working with Ms. Neasom after she lied on him. Mr. Woods promised plaintiff that the matter would be investigated, and he sent plaintiff back to work with management to make sure plaintiff was safe until the shift was completed.

**Retaliatory Act 4**

The following day, on 16 May 2014, Ms. Berman called plaintiff and informed him that he was suspended until further notice without giving him any legitimate reason. Plaintiff asked was Ms. Neasom suspended because she was the aggressor against him. Ms. Berman stated she could not answer that question but would give him a call on the 19th day of May to follow up about the suspension.

Ms. Berman called but gave no update or legitimate reason to plaintiff for the unlawful suspension. Instead, she asked plaintiff if he wanted her to speak on his behalf in a meeting to keep his job. Plaintiff informed Ms. Berman he could speak for himself and that the truth needs no support. Again, Ms. Berman stated she would contact plaintiff with the results of the meeting.

Plaintiff did not trust Ms. Berman so he contacted other management personnel to investigate why he was suspended and when would he be able to return back to work. Security informed plaintiff that Ms. Berman ordered for his employee card to be deactivated until further notice in an email but gave no reason for the deactivation. In addition, Ms. Neasom was not suspended or disciplined for harassing plaintiff.

**Retaliatory Act 5**

Approximately on 23 May 2014, Dave Barbour called plaintiff to inform him that his employment was terminated for the incident that happened with Lisa Neasom on 15 May 2014. Plaintiff appealed the unlawful termination by sending an email to HR Manger Lanik McIntyre, Dave Barbour and Bill Woods. No one from management responded back. (See Exhibit 7).

Plaintiff filed for unemployment compensation with the Maryland Department of Labor on 29 May 2014. Defendant failed to give any reason to the DLLR for plaintiff's unlawful termination, and plaintiff was awarded benefits as a result on 13 June 2014. (See Exhibit 8).

The unemployment compensation system was created for the purpose of providing financial assistance to employees who become unemployed through no fault of their own. Courts are thus inclined to interpret eligibility rules liberally in favor of coverage. They also tend to interpret disqualification provisions narrowly to avoid benefit forfeitures in close cases. Nonetheless, when employers can demonstrate that claimants have engaged in disqualifying conduct, benefits will be withheld. (See Exhibit 9).

At the time plaintiff was terminated, he was a full time employee. The defendant's unjustified extended probation document agreement expired on the 20 May 2018. Plaintiff was terminated on 23 May meaning that he was a full time employee at the time of the unlawful termination.

## 42 U.S.C. 1981 ("SECTION 1981")

Under Section 1981, a plaintiff can prove illegal retaliation under Title VII or 1981 if he shows that (1) he engaged in protected activity, (2) he suffered adverse employment action at hands of his employer, and (3) employer took adverse action because of protected activity. Bryant v. Aiken Regional Medical Centers Inc., C.A.4 (S.C.) 2003, 333 F.3d 536, certiorari denied 124 S.Ct. 1048, 540 U.S. 1106, 157 L.Ed2d 891. Civil Rights 1243. (See Exhibit 10).

## STANDARD OF REVIEW

Plaintiff seeks leave to proceed in forma pauperis. Under 28 U.S.C. 1915(a)(1), an indigent litigant may commence an action in federal court without prepaying the filing fee. To guard against possible abuses of this privilege, the statute requires a district court to dismiss any claim that is frivolous or malicious, or fails to state a claim on which relief may be granted. *See* 28 U.S.C. 1915(e)(2)(B)(i) and (ii). In this context, this court is mindful of its obligation to liberally construe the pleadings of pro se litigants. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007).

In evaluating a pro se complaint, a plaintiff's allegations are assumed to be true. *Id.* at 93 (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555-56 (2007). Nonetheless, liberal construction does not mean that a court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985) (stating a district court may not "conjure up questions never squarely presented"). In making this determination, the district court need not look beyond the complaint's allegations.... It must hold the pro se complaint to less stringent standards than pleadings drafted by attorneys and must read the complaint liberally. *White v. White,* 886 F. 2d 721, 722-723 (4th Cir. 1989).

## COUNT 1

## RACE DISCRIMINATION AND RETALIATION IN VIOLATION OF

## 42 U.S.C. 1981 AGAINST ALL DEFENDANTS

Defendant's conduct as described herein constitutes intentional discrimination on the bases of race and retaliation with respect to the making, performance, modification and/or termination of contracts and benefits, privileges, terms, and conditions of the contractual relationship.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully request the following relief:

A. A declaratory judgement that defendant's employment policies, practices and/or procedures challenged here are illegal and in violation of Section 1981;

B. A permanent injunction against defendant and its agents, employees and/or representatives prohibiting them from engaging in any further unlawful practices, policies, customs, usages, retaliation and race discrimination as set forth above;

C. An Order requiring defendant to initiate and implement programs that (1) will provide equal opportunities for African-American; (2) will remedy the effects of defendant's past and present unlawful employment policies, practices and/or procedures; and (3) will eliminate the continuing effects of the discriminatory practices described herein;

D. An Order requiring defendant to initiate and implement systems to ensure that African-American employees are treated in a non-discriminatory manner;

E. An award in an amount not less than 5,000,000; and

F. An award of litigation costs and expenses, including reasonable attorney fees to plaintiff;

G. An award of such other and further relief as the Court may deem just and proper; and

H. Reinstatement to job.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all issues so triable.

DATE: 10 April 2018

Respectfully submitted,

Phillip O'Briant

433 Drew Street

Baltimore, Maryland 21224

(443) 314-2958

obriantphil@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PHILLIP O'BRIANT,

    *Plaintiff,*

    v.

                     Civil Action No. ELH-18-1048

NESTLE DREYERS ICE CREAM, et
al.,

    *Defendants.*

## MEMORANDUM OPINION

Phillip O'Briant, the self-represented plaintiff, filed an employment discrimination suit in April 2018 against defendants "Nestlé Dreyers Ice Cream" ("NDIC" or "Nestlé"),[1] Kelli Quinn, Caitlin Berman, Lanik McIntyre, and Bill Woods, alleging employment discrimination. ECF 1 (the "Complaint"). In particular, he asserted a claim under 42 U.S.C. § 1981 and a claim for "Wrongful Discharge/ McDonnell Douglas Scheme" under Maryland law. *Id.* at 3. Notably, plaintiff included with his suit a "Notice Of Rights" from the Equal Employment Opportunity Commission ("EEOC"), dated June 26, 2015, advising him of his right to sue under Title VII within 90 days. ECF 1 at 7. In addition, plaintiff appended ten exhibits to his suit. ECF 1-1 to ECF 1-10.

On April 30, 2018, plaintiff amended his Complaint. ECF 8. He added Terrence Murray, Lisa Neasom, Linda Hastie, and Dave Barbour as defendants. *Id.* NDIC later answered the suit. ECF 26.

---

[1] The corporate name appears to be "Nestle Dreyer's Ice Cream Co." or "Nestlé Dreyer's Ice Cream Inc.," known as "Nestlé."

Now pending is NDIC's "Second Renewed Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice" (ECF 39, the "Motion"), along with five exhibits. ECF 39-2 to ECF 39-7. In the Motion, filed April 14, 2020, Nestlé seeks dismissal of the suit under Rule 37 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").[2]

The Docket does not indicate that Mr. O'Briant has properly served the individual defendants, despite several reminders. Therefore, by Order of June 10, 2020 (ECF 41), the Court directed plaintiff to show cause by July 1, 2020, why the claims against the individual defendants should not be dismissed, without prejudice, for failure to effect service of process. ECF 41.

On June 24, 2020, plaintiff filed a "Final Response to Any and All Erroneous Judgments or Orders from U.S. District Judge Ellen Hollander." ECF 42. He states, *inter alia*, that he "will not respond or communicate with this court any further moving forward."

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6. For the reasons that follow, I shall grant the Motion. Further, because plaintiff has failed to provide good cause to excuse his failure to serve the individual defendants, I shall dismiss them from the suit, without prejudice.

---

[2] Ordinarily, plaintiff's response would have been due by May 31, 2020. *See* Local Rule 105.2(a); Fed. R. Civ. P. 6. However, in light of the COVID-19 pandemic, Chief Judge Bredar extended by 84 days all filing deadlines that were set to fall between March 16, 2020, and June 5, 2020, unless otherwise specified by the presiding judge. *See In re: Court Operations Under the Exigent Circumstances Created by COVID-19*, Case 1:00-mc-00308, Standing Order 2020-07 (D. Md. Apr. 10, 2020).

# I. Background[3]

## A. Factual Background

Plaintiff, a resident of Maryland, is an African-American male. ECF 1 at 8. NDIC is a company that produces ice cream; it has a facility in Laurel, Maryland. *Id.* The individual defendants are employees of Nestlé. *See id.*

Mr. O'Briant began his employment with NDIC on January 13, 2014, as an "Ice Cream Maker." *Id.*; *see also* ECF 1-1. At the time, he was supervised by Kelli Quinn, a white female. ECF 1 at 8. Plaintiff claims that Quinn began making "racial comments" about how he was "black with a white man's name" and how "she liked Africans more than African Americans because they valued education more." *Id.* According to plaintiff, the comments "escalated to threats of his job security which made the work environment hostile and uncomfortable . . . ." *Id.*

On March 11, 2014, plaintiff complained to Lanik McIntyre, a Human Resources Manager at NDIC, about Quinn's behavior. *Id.* at 9. In response, McIntyre scheduled a meeting for March 13, 2014, to discuss Quinn's misconduct. *Id.* However, plaintiff claims that McIntyre did not appear for the meeting. Instead, "HR Generalist" Caitlin Berman, a white female, met with Mr. O'Briant. *Id.* According to plaintiff, Berman failed to take any corrective action to address Quinn's racist comments. *Id.*

Plaintiff alleges that after the meeting, he was subjected to several acts of retaliation. *Id.* at 9-11. First, Mr. O'Briant alleges that on March 23, 2014, Quinn issued him a "Final Written Warning corrective action document" for leaving work early on March 11, 2014, and for calling out due to inclement weather on March 17, 2014. *Id.* at 9. The discipline was allegedly approved

---

[3] This case is one of eight that plaintiff has filed in this Court. *See* JFM-16-2616; JFM-17-1050; RDB-18-0855; GLR-18-1324; GLR-18-1641; ELH-18-2099; GJH-18-2705; GLR-18-2614.

by Linda Hastie, a white female. *Id.* at 9. According to plaintiff, the corrective action was unjustified because he had not accumulated the requisite number of discipline points pursuant to NDIC policy so as to warrant the issuance of a written warning. *Id.* Plaintiff signed the corrective action "under duress" and agreed to arrive at work promptly and refrain from leaving early for 32 days, expiring on April 23, 2014. *Id.*

Mr. O'Briant contends that he satisfied the requirements of the "corrective action." *Id.* Nevertheless, Terrence Murray and Quinn informed him on April 21, 2014, that management had decided to extend his probationary period for 90 days. *Id.* Plaintiff allegedly signed the extended probation document "under duress" and agreed to complete certain tasks, including meeting with Quinn every Monday. *Id.*

Further, Mr. O'Briant claims that on May 15, 2014, he was "harassed" by Lisa Neasom, a black female employee, "who aggressively snatched company property from his hands as she yelled obscenities at him because he would not participate in a shift revote . . . ." *Id.* at 10. Plaintiff reported the incident to his supervisor, Rodney Davis, who took him and Neasom to Berman and Bill Woods. Berman met with Neasom while Woods met with plaintiff. *Id.* Woods allegedly told plaintiff that he would investigate the matter and sent Mr. O'Briant back to work. *Id.*

The next day, Berman called Mr. O'Briant and informed him that he was suspended until further notice. *Id.* When plaintiff asked if his suspension stemmed from the incident with Neasom, Berman responded that she could not discuss the matter but would follow up with him on May 19, 2014. *Id.* When Berman called on May 19, 2014, she asked Mr. O'Briant if he would like to speak at a meeting concerning whether he should keep his job. *Id.* Because Mr. O'Briant did not trust Berman, he contacted management personnel to inquire why he had been suspended. *Id.* But, Mr. O'Briant alleges that management declined to explain why he had been suspended. *Id.*

4

On May 23, 2014, Dave Barbour called plaintiff and informed him that his employment was terminated due to the incident involving Neasom. *Id.* Plaintiff appealed the termination by emailing McIntyre, Barbour, and Woods. However, Mr. O'Briant claims that no one responded to his email. *Id.*

At some point in time, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). On June 26, 2016, the EEOC issued a "Notice Of Rights" to plaintiff, advising him that he had 90 days to file suit under Title VII. ECF 1 at 7.

### B. Procedural History

On April 11, 2018, Mr. O'Briant filed this suit for wrongful discharge against NDIC, Quinn, Berman, McIntyre, and Woods. ECF 1. In a Memorandum (ECF 3) and Order (ECF 4) of April 17, 2018, the Court dismissed the Complaint as time-barred because plaintiff had failed to file suit within 90 days of receipt of his notice of right to sue letter, as required by Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-5(f)(1). But, as noted, suit was filed under 42 U.S.C. § 1981.

Thereafter, plaintiff filed a motion for reconsideration. ECF 5. By Order of April 24, 2018 (ECF 6), I reopened the case. I observed that in light of the four-year statute of limitations period applicable to claims arising under 42 U.S.C. § 1981, Mr. O'Briant's case was not time-barred. *Id.* at 2. However, I noted that plaintiff had not effected service of process on the defendants. Therefore, I directed Mr. O'Briant to furnish completed summons to the Clerk so that the U.S. Marshal could effect service of process. *Id.*

Summonses were issued as to NDIC, Quinn, Berman, McIntyre, and Woods on April 30, 2018. ECF 7. The same day, plaintiff filed an Amended Complaint adding Murray, Neasom,

Hastie, and Barbour as defendants. ECF 8. Summonses were issued as to these defendants on May 4, 2018. ECF 10.

The docket reflects that on June 12, 2018, the U.S. Marshal served summonses and copies of the Complaint via FedEx on NDIC and the eight individual defendants named in this employment discrimination case. ECF 11. However, per plaintiff's instructions, all of the summonses and Complaint were mailed to Nestlé's facility at 9090 Whiskey Bottom Road in Laurel, Maryland, including for the individual defendants.

Thereafter, on July 3, 2018, Mr. O'Briant filed a prediscovery motion for summary judgment. ECF 12. The same day, the Court received correspondence from counsel for NDIC (ECF 13), detailing deficiencies in the service of process of the Complaint and summons. Counsel identified the proper resident agent authorized to accept service of process for NDIC. *Id.* at 1-2. In addition, counsel correctly identified how the individual defendants could be properly served. Despite these deficiencies, counsel indicated that NDIC was willing to deem the summons and Complaint as served on Nestlé as of the date of the letter and thus answer or otherwise respond to the Complaint. *Id.*

In an Order of July 9, 2018 (ECF 14), I recounted that the EEOC issued a notice to plaintiff on June 25, 2015, advising him of his right to sue within 90 days. *See* ECF 1 at 7. Therefore, I mistakenly applied Title VII law and concluded that the suit was time-barred. I also denied plaintiff's prediscovery summary judgment motion and directed the Clerk to close the case. *Id.*

On July 18, 2018, plaintiff noted an appeal. ECF 15. On November 30, 2018, the United States Court of Appeals for the Fourth Circuit dismissed plaintiff's appeal and remanded the case for further proceedings as to plaintiff's § 1981 claim. *See* ECF 18 at 1. In a Memorandum (ECF 19) and Order (ECF 20) of December 4, 2020, I reopened the case as to plaintiff's claim arising

6

under 42 U.S.C. § 1981 and directed NDIC's counsel to advise the Court as to whether counsel was authorized to accept service of process on behalf of NDIC and the individual defendants.

Counsel for NDIC responded on December 11, 2018, advising that NDIC would deem the summons and Complaint properly served, but it would not accept service of process on behalf of the individual defendants. ECF 21. Therefore, by Order of January 30, 2019 (ECF 25), the Court ordered Nestlé to answer the suit by February 5, 2019.

In correspondence docketed December 11, 2018 (ECF 22), Mr. O'Briant complained that I failed to address his Section 1981 claim, "as the USCA ordered." *Id.* at 1. He also stated that I was "going against" the Fourth Circuit's decision "by asking [Nestlé's] counsel to respond to the complaint knowing argument would not aid the decisional process." *Id.* Plaintiff reiterated that the Fourth Circuit "determined" that a response to the Complaint "will not aid the decisional process," *id.* at 2, and he claimed that the individual defendants were properly served. *Id.* Therefore, he was "demanding" that I rule on his summary judgment motion "without argument or further delay." *Id.*

The Court responded by letter of December 14, 2018. ECF 23. I stated, in part:

> I write in response to your letter of December 7, 2018 (ECF 22), concerning your employment discrimination case, and the recent dismissal of your appeal by the United States Court of Appeals for the Fourth Circuit, along with its remand to this Court. *See* ECF 18 (Judgment of November 30, 2018).

> \* \* \*

> Your understanding of the Fourth Circuit's per curiam decision is incorrect. The appellate court indicated that it did not require oral argument to aid in its decision to remand your case for further litigation under 42 U.S.C. § 1981. However, the court did not reach the merits of your § 1981 case, and its decision has no bearing on the merits of your claim. Moreover, Nestle Dreyers Ice Cream ("NDIC") and the individual defendants are entitled to contest the action.

> Further, service of process on the individual employee defendants may have been defective. This issue, and any corrective action required to obtain proper

service of process, shall await further review.

I hope this clarification is helpful.

NDIC answered the Amended Complaint on February 5, 2019. ECF 26. The next day, the Court gave Mr. O'Briant an opportunity to cure the deficiencies regarding his service as to the individual defendants. ECF 27. I explained that service on the individual defendants "was not properly made" by delivering the summonses and Complaint to NDIC, the corporate defendant. *Id.* at 1. Accordingly, I directed plaintiff to provide the U.S. Marshal with the home address of each individual defendant in order to effect service, or "risk their dismissal from suit." *Id.* at 2.

On March 4, 2019 the Court issued a Scheduling Order (ECF 28), setting, *inter alia*, a discovery deadline of July 24, 2019. On May 3, 2019, NDIC served plaintiff with its First Set of Interrogatories and First Request for Production of Documents. *See* ECF 30-2. Counsel for NDIC told plaintiff that failure to respond within 30 days "may result in the Court imposing sanctions and/or dismissing [his] lawsuit." *Id* at 2. Mr. O'Briant responded, stating that he would "only respond to the order from the U.S. Supreme Court regarding this case." ECF 30-3 at 2. Plaintiff also claimed that "U.S. District Judge Hollander still has not rendered her decision for his section 1981 claim, after she was ordered by the 4th Circuit to do so on 30 November 2018." *Id.*

Counsel for NDIC emailed plaintiff on May 9, 2019, asking him to clarify whether he intended to respond to their discovery requests. *See* ECF 30-6 at 2. Again, counsel for NDIC explained to plaintiff that "failure to do so will afford Nestlé the right to dismiss [his] action." *Id.* Plaintiff did not respond. Counsel for Nestlé emailed plaintiff again on May 13, 2019. *See* ECF 30-6 at 2. When plaintiff did not respond, counsel for Nestlé followed up with plaintiff on May 13, 2019. *See* ECF 30-7 at 2. Plaintiff answered the following day, stating that he "object[ed] to responding" to NDIC's discovery requests. *See* ECF 30-9. Although plaintiff's responses to

8

NDIC's discovery requests were due on June 3, 2019, Mr. O'Briant did not provide responses to these requests, nor did he ask counsel for NDIC for an extension.

On July 19, 2019, pursuant to Rule 37 of the Federal Rules of Civil Procedure, NDIC filed a "Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice or, in the Alternative, to Compel Plaintiff to Respond to Defendant's Discovery." ECF 30. According to NDIC, plaintiff's refusal to engage in discovery had prevented it from preparing a defense. ECF 30-1 at 8. Therefore, defendant urged the Court to sanction plaintiff under Rule 37 by dismissing the suit, with prejudice.

By Order of August 4, 2019 (ECF 34), I denied the motion, without prejudice to the right of NDIC to refile its motion if plaintiff fails to cooperate in regard to discovery. Again, I endeavored to dispel plaintiff's "misconception that the remand by the Fourth Circuit on the § 1981 claim was a ruling on the merits of that claim, or a direction to this Court to Rule immediately on the merits," explaining that the "remand did not direct this Court to issue a ruling on the merits of the § 1981 claim *prior to discovery*." *Id.* at 2 (emphasis in ECF 34). However, in light of Mr. O'Briant's pro se status, the Court gave him an "opportunity to cure his misunderstanding" by extending the discovery deadline to October 4, 2019. That said, I also cautioned, *id.*: "Plaintiff is forewarned that failure to comply with the rules governing discovery may result in the dismissal of the case."

Plaintiff continued to refuse to respond to NDIC's discovery requests. On August 12, 2019, counsel for NDIC wrote to Mr. O'Briant, asking when Nestlé could expect his responses to its discovery requests. ECF 35-2. The same day, plaintiff responded that he had filed a writ of mandamus with the U.S. Supreme Court. ECF 35-3. In his view, "any order from Judge Ellen Lipton Hollander is erroneous" and NDIC "cannot refute [his] clear and convincing evidence that

he is entitled to the judgment of 5,000,000 as a matter of law." *Id.* Further, he said that "there should be no reason for counsel for defendant communicating . . . about any depositions in regard to the case at bar." *Id.* He added, *id.*: "This should put an end to any and all communications with counsel including Judge Hollander."

Counsel for NDIC contacted plaintiff again on August 30, 2019, requesting an update as to NDIC's outstanding discovery requests. ECF 35-4. Again, plaintiff refused to participate in discovery. ECF 35-5. In an email of August 31, 2019, he asserted that the Fourth Circuit had "ordered" me to "render [my] decision" in his case, and he noted that he had timely filed a summary judgment motion. *Id.* at 1. Further, he stated: "Defendants cannot refute plaintiff's clear and convincing evidence demonstrating that he was wrongfully terminated based on his race" and the Court has a "legal obligation" to grant summary judgment in his favor. *Id.* He concluded, *id.* at 2: "In closing, plaintiff will not engage in back and forth frivolous communications with defendants . . . . Therefore, defendants have until 9 September to resolve this matter through settlement . . . ." *Id.* He demanded $5 million. *Id.*

Thereafter, on September 6, 2019, NDIC renewed its motion to dismiss. ECF 35. At the time of the motion, plaintiff's responses to NDIC's discovery requests were more than three months overdue. *Id.*, ¶ 7.

Nevertheless, on December 16, 2019, the Court again denied NDIC's motion, without prejudice. ECF 37. The Court acknowledged that "it appears that Mr. O'Briant continues to ignore his responsibilities" to engage in discovery." *Id.* at 1. However, given plaintiff's status as a self-represented litigant, the Court was "inclined . . . to afford Mr. O'Briant one more opportunity to participate in discovery." *Id.* Accordingly, the Court extended the discovery deadline to March

6, 2020. *Id.* But, I advised Mr. O'Briant that "failure to participate in discovery may result in the dismissal of this case." *Id.* at 2.

Counsel for Nestlé contacted plaintiff on January 15, 2020, to ask when NDIC could expect to receive plaintiff's responses to NDIC's discovery requests. ECF 39-2. Plaintiff responded on January 16, 2020, stating that he did not have to comply with the Court's Order requiring him to respond, because it "conflict[ed] with the Court of Appeals for the Fourth Circuit order compelling the District Court for Maryland to render a decision for plaintiff's section 1981 claim against defendant(s)." ECF 39-3.

On March 4, 2020, counsel for NDIC contacted plaintiff yet again and asked him whether he was going to reply to Nestlé's discovery requests. ECF 39-4. Plaintiff responded that he was too busy to respond to do so, but he "would be willing to meet with [counsel for NDIC] to answer [their] questions." ECF 39-5. On March 6, 2020, counsel for NDIC told Mr. O'Briant that he could not be deposed without first providing NDIC the necessary written discovery. ECF 39-6 at 1. In the same email, counsel for NDIC again asked about the status of plaintiff's discovery responses. *Id.* Plaintiff responded shortly before the discovery deadline that he would "work on completing the paperwork." ECF 39-7.

NDIC filed the instant Motion on April 14, 2020. ECF 39. According to NDIC, at the time it filed the Motion, Mr. O'Briant still has not provided NDIC with any written responses or produced any of the requested documents. ECF 39, ¶ 11. At the time, plaintiff's discovery responses were nearly eleven months overdue.

By Order of June 10, 2020 (ECF 41), the Court noted that plaintiff's response to the Motion is due on July 24, 2020. *Id.* at 2 n.1.[4] However, the Court observed that, despite repeated

---

[4] The response deadline was extended because of the COVID-19 pandemic.

reminders, O'Briant still had not served the individual defendants. *Id.* at 3. Given that more than

two years had elapsed since plaintiff initiated this suit, I concluded that "it appears that plaintiff

has abandoned his claims against the individual defendants . . . ." *Id.* Therefore, I ordered plaintiff

to show cause by July 1, 2020, why the claims against the individual defendants should not be

dismissed under Fed. R. Civ. P. 4(m) and Local Rule 103.8, without prejudice, for failure to effect

service of process. *Id.*

On June 24, 2020, the Court received correspondence from plaintiff. ECF 42. Plaintiff

asserts, *id.*: "Judge Hollander engaged in wanton and reckless acts, in her official capacity, when

she disregarded the U.S. Court of Appeals for the Fourth Circuit's order dated 30 November 2018,

to render her decision for plaintiff Phillip O'Briant's section 1981 claim. . . . Therefore, this case

must be submitted and viewed by the U.S. Supreme Court, a superior court, under a writ of

mandamus." *Id.* Further, plaintiff advises that he "file[d] federal criminal charges against Judge

Hollander with the [FBI] because she failed to timely move to protect and defend the Constitution

of the United States . . . and she shall be charged with capital felony treason under the law." *Id.*

Plaintiff concluded his letter by informing the Court that he "will not respond or communicate

with this court any further moving forward." *Id.*

## II.    The Motion

Defendants seek dismissal of plaintiff's case, pursuant to Rule 37 of the Federal Rules of

Civil Procedure. *See* ECF 39 at 1. Pursuant to Rule 37, a court may impose sanctions "if a party,

after being properly served with interrogatories under Rule 33 or a request for inspection under

Rule 34, fails to serve its answers, objections, or written responses."  Fed. R. Civ. P.

37(d)(1)(A)(ii).   The choice of sanctions is within the court's discretion and may include

"dismissing the action or proceeding in whole or in part" or "rendering a default judgment against a disobedient party." Fed. R. Civ. P. 37(b)(2)(A)(v).

Before ordering dismissal under Rule 37(b) or (d), the court applies a four-factor test: "'(1) whether the non-complying party acted in bad faith; (2) the amount of prejudice that noncompliance caused the adversary; (3) the need for deterrence of the particular sort of non-compliance; and (4) whether less drastic sanctions would have been effective.'" *Belk v. Charlotte Mecklenburg Bd. of Educ.*, 269 F.3d 305, 348 (4th Cir. 2001) (citation omitted).

Rule 41(b) of the Federal Rules of Civil Procedure is also pertinent. *See Carter v. Univ. of W. Va. Sys.*, 23 F.3d 400, 1994 WL 192031, at *2 (4th Cir. 1994) (Table opinion) (observing that the "legal standard for dismissals under Rule 37 is virtually the same as that for dismissals for failure to prosecute under Rule 41"); *accord Lance v. Megabus Ne., LLC*, PWG-16-3459, 2017 WL 3480800, at *3 (D. Md. Aug. 14, 2017) (analyzing facts under both Rule 37 and Rule 41). Rule 41(b) states: "If the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Moreover, Rule 41(b) provides that, "[u]nless the dismissal order states otherwise," a dismissal under the rule "operates as an adjudication on the merits." *Id.*

In order to evaluate whether dismissal under Rule 41(b) for failure to prosecute is appropriate, the Fourth Circuit has articulated a four-factor test: a court must consider: "'(1) the plaintiff's degree of personal responsibility; (2) the amount of prejudice caused the defendant; (3) the presence of a drawn out history of deliberately proceeding in a dilatory fashion; and (4) the effectiveness of sanctions less drastic than dismissal.'" *Attkisson v. Holder*, 925 F.3d 606, 625 (4th Cir. 2019) (quoting *Hillig v. Comm'r of Internal Revenue*, 916 F.2d 171, 174 (4th Cir. 1990)); *see also Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989) (Powell, J.).

"Those criteria, however, 'are not a rigid four-prong test,'" and the propriety of an involuntary dismissal ultimately turns on the circumstances of each case. *Attkisson*, 925 F.3d at 625 (quoting *Ballard*, 882 F.2d at 95). The Fourth Circuit has said: "While the power to dismiss clearly lies with the district courts, it is appropriately exercised only with restraint. 'Against the power to prevent delays must be weighed the sound public policy of deciding cases on their merits.'" *Dove v. CODESCO*, 569 F.2d 807, 810 (4th Cir. 1978) (citation omitted). Therefore, only "the most flagrant case, where the party's noncompliance represents bad faith and callous disregard for the authority of the district court and the Rules, [should] result in the extreme sanction of dismissal or judgment by default." *Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989).

This is the extreme case where dismissal of the suit is warranted under Rule 37 and Rule 41(b). Plaintiff's flagrant refusal to participate in discovery, despite repeated Court orders, necessitates the dismissal of Mr. O'Briant's action.

As noted, the first factor requires the Court to consider "the plaintiff's degree of personal responsibility." *Hillig*, 916 F.2d at 174. For instance, a plaintiff should not be penalized where, unbeknown to him, his lawyer briefly failed to comply with a court order. *See Attkisson*, 925 F.3d at 626. Similarly, a court should not resort to the drastic sanction of Rule 41(b) where the litigant is self-represented and "had limited opportunities to 'follow the progress of his case.'" *Id.* (citation omitted).

To be sure, plaintiff is self-represented. But, self-represented litigants "as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would be impossible." *Ballard*, 882 F.2d at 96. Consequently, a litigant's pro se status does not excuse him from complying with the Federal Rules of Civil Procedure. *See*

*Dancy v. Univ. of N.C. at Charlotte*, No. 3:08–CV–166–RJC–DCK, 2009 WL 2424039, at *2 (W.D.N.C. Aug. 3, 2009); *see, e.g., Arnett v. Prince George's County*, AW–02–3861, 2004 WL 3313218, at *2 (D. Md. July 29, 2004) (dismissing for lack of prosecution under Rule 41(b) where, among other factors, "the Plaintiff is proceeding pro se, and thus, is solely responsible for the delay that has been caused in his case"). Mr. O'Briant's steadfast failure to comply with the Court's Orders concerning discovery supports a finding of bad faith, not inadvertence.

For starters, Mr. O'Briant is a frequent litigator in this District. *See O'Briant v. Mayor & City Council of Baltimore City*, GLR-18-2614 (D. Md. Sept. 28, 2018), *aff'd*, No. 19-1036 (4th Cir. May 3, 2019); *O'Briant v. GAF Corp.*, ELH-18-2457 (D. Md. Nov. 12, 2019); *O'Briant v. Atlas Container Corp.*, GJH-18-2705 (D. Md. Dec. 27, 2018); *O'Briant v. Cox*, ELH-18-2099 (D. Md. July 31, 2018); *O'Briant v. Schaeffer*, GLR-18-1641 (D. Md. June 28, 2018); *O'Briant v. Renner*, GLR-18-1324 (D. Md. Sept. 26, 2018), *aff'd*, No. 19-1121 (4th Cir. Mar. 31, 2019); *O'Briant v. Rhodes*, RDB-18-855 (D. Md. Mar. 30, 2018); *O'Briant v. Rhodes*, JFM-17-1050 (D. Md. Apr. 24, 2017); *O'Briant v. Atlas Container Corp.*, JFM-16-2616 (D. Md. Sept. 7, 2016).[5] In short, plaintiff is no stranger to federal civil litigation generally, or the local rules of this District specifically.

Moreover, Mr. O'Briant was not unaware that the failure to participate in discovery could result in the dismissal of his lawsuit. Indeed, in *O'Briant v. GAF Corporation*, the Court dismissed plaintiff's suit, without prejudice, on October 31, 2019, under Rule 41(b), due to his repeated refusal to respond to the defendant's written discovery requests. *See* ELH-18-2457, ECF 44 &

---

[5] The Court may take judicial notice of the filing of the Motion and its content. *See* Fed. R. Civ. P. 201; *Brown v. Ocwen Loan Servicing, LLC*, PJM-14-3454, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015) ("A court may take judicial notice of docket entries, pleadings, and papers in other cases . . . ."), *aff'd*, 639 F. App'x 200 (4th Cir. 2016).

ECF 45. So, at the latest, as of that time plaintiff was on notice that if he refused to engage in discovery his lawsuit could be subject to dismissal. In light of his prior conduct, plaintiff's actions in this case do not suggest ignorance but rather a "pattern of indifference and disrespect to the authority of the court." *Mut. Fed. Sav.*, 872 F.2d at 93.

With respect to the second factor, "the amount of prejudice," *Hillig*, 916 F.2d at 174, Mr. O'Briant's refusal to respond to NDIC's written discovery requests has severely prejudiced NDIC. A defendant cannot litigate the case in the dark. "'The purpose of pre-trial discovery is for a litigating attorney to obtain information from the opposing party, information which in many cases is not otherwise available.'" *Adams v. Md. Mgmt. Co.*, WDQ-11-2408, 2013 WL 142074, at *2 (D. Md. Jan. 10, 2013) (citation omitted). Moreover, the long delay impairs NDIC's ability to prepare an effective defense: witnesses become difficult to locate; memories fade, making testimony less reliable; and documentary evidence spoils. The second factor plainly favors dismissal.

So, too, does the third factor—the delay caused by the plaintiff's dilatory conduct. *Hillig*, 916 F.2d at 174. As the procedural summary reveals, the Court has repeatedly endeavored to accommodate Mr. O'Briant; to explain that he is obligated to participate in discovery; and to clarify that the Fourth Circuit did not rule on the merits of his case when it remanded the matter to this Court. Rather, the remand requires the Court to allow the parties to litigate the case. Yet, plaintiff has flagrantly ignored repeated orders from this Court to participate in discovery.

In July 2019, NDIC moved to dismiss plaintiff's suit because he would not participate in discovery. I denied the motion and advised Mr. O'Briant of the consequences if his conduct did not change. ECF 34. NDIC moved to dismiss the suit a second time in September 2019. Again, the Court denied the motion, giving Mr. O'Briant yet another opportunity to change his behavior.

ECF 37. After seven months passed, defendant renewed its motion yet again in April 2020. To date, plaintiff has yet to comply with the Court's orders regarding discovery. Thus, despite two years of litigation, this suit languishes at the starting line, all because of plaintiff's erroneous belief that he is not subject to the rules of procedure.

As to the fourth factor, the adequacy of less drastic sanctions, *Hillig*, 916 F.2d at 174, it is clear that dismissal is the only sanction that could effectively deter Mr. O'Briant's potential future noncompliance. The Court has made every effort to induce plaintiff's compliance. He has been given warnings and opportunities to comply. ECF 34; ECF 37. Instead, Mr. O'Briant has made it crystal clear to opposing counsel and to the Court that he has no interest in participating in the judicial process. *See, e.g.*, ECF 42. Consequently, "less drastic sanctions [would] serve little pragmatic purpose." *Arnett*, 2004 WL 3313218, at *3.

In light of plaintiff's near-wholesale failure to respond to the defense's discovery requests, and his unwillingness to prosecute the action, the case simply cannot proceed. Accordingly, because all four Rule 37 and Rule 41(b) factors weigh in favor of dismissal, I shall dismiss the Amended Complaint as to NDIC.

### III.    The Individual Defendants

Plaintiff's initial Complaint and the Amended Complaint name Kelli Quinn, Caitlin Berman, Lanik McIntyre, Bill Woods, Terrence Murray, Lisa Neasom, Linda Hastie, and Dave Barbour as defendants. ECF 1; ECF 8.

As noted, plaintiff attempted to effect service of process on these defendants by serving summonses and copies of the Complaint on NDIC on June 12, 2018. ECF 11. Since then, the Court has repeatedly informed plaintiff that his service was improper and instructed him to cure

17

this deficiency. ECF 19; ECF 27; ECF 41. The docket does not reflect that plaintiff has effected service of process on these defendants.

Fed. R. Civ. P. 4(m) requires a plaintiff to serve defendants "within 90 days after the complaint is filed." If any defendant is not served within that time, "the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* Pursuant to Fed. R. Civ. P. 4(m), plaintiff was required to serve the individual defendants, at the very latest, by July 19, 2018.

Local Rule 103.8 provides that "the Court may enter an order asking the party to show cause why the claim should not be dismissed" if a plaintiff "has not effected service of process within 90 days" of filing the suit. The same Local Rule states that "the claim shall be dismissed without prejudice" if the plaintiff fails to show cause within "within fourteen (14) days of the entry of the order or such other time as may be set by the Court." Local Rule 103.8.

As noted, on June 10, 2020, the Court directed Mr. O'Briant to show cause by July 1, 2020, as to why the claims against the individual defendants should not be dismissed under Fed. R. Civ. P. 4(m) and Local Rule 103.8, without prejudice, for failure to effect service of process. ECF 41. Instead of responding to the substance of the Court's Order, Mr. O'Briant advised the Court that he "will not respond or communicate with this court any further moving forward." ECF 42.

Therefore, I shall dismiss the individual defendants from the suit, without prejudice, pursuant to Rule 4(m) and Local Rule 103.8.

## IV. Conclusion

Of course, the Court regrets that it erroneously construed the case under Title VII, perhaps because of the "Notice Of Rights" from the EEOC that plaintiff included with his suit. But, that error is not a license for plaintiff to flout his obligations as a litigant in a case he initiated.

For the aforementioned reasons, I shall grant defendants' Motion to Dismiss (ECF 39).

And, I shall dismiss the individual defendants from the suit.

An Order follows.

Date: July 6, 2020

_____/s/_____
Ellen L. Hollander
United States District Judge

**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-1828

PHILLIP O'BRIANT,

Plaintiff - Appellant,

v.

NESTLE DREYER'S ICE CREAM; KELLI QUINN, Supervisor; CAITLIN
BERMAN, HR Generalist; LANIK MCINTYRE, Human Resources Manager;
BILL WOODS, Plant Manager; TERRENCE MURRAY; LISA NEASOM;
LINDA HASTIE; DAVE BARBOUR,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Baltimore.
Ellen L. Hollander, District Judge. (1:18-cv-01048-ELH)

Submitted: November 9, 2018                    Decided: November 30, 2018

Before MOTZ, AGEE, and QUATTLEBAUM, Circuit Judges.

Dismissed and remanded by unpublished per curiam opinion.

Phillip O'Briant, Appellant Pro Se.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Phillip O'Briant seeks to appeal the district court's order dismissing his amended complaint as time-barred based on the limitations period for filing a Title VII lawsuit. In its final order, the district court did not adjudicate O'Briant's claims under 42 U.S.C. § 1981 (2012) or his argument that his action was timely filed within the four-year statute of limitations period applicable to those claims. *See Lee v. Norfolk S. Ry. Co.*, 802 F.3d 626, 636 & n.8 (4th Cir. 2015) (citation omitted). This court may exercise jurisdiction only over final orders, 28 U.S.C. § 1291 (2012), and certain interlocutory and collateral orders, 28 U.S.C. § 1292 (2012); Fed. R. Civ. P. 54(b); *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 545-46 (1949). The order that O'Briant seeks to appeal is neither a final order nor an appealable interlocutory or collateral order. *See Porter v. Zook*, 803 F.3d 694, 696 (4th Cir. 2015) ("[I]f it appears from the record that the district court has not adjudicated all of the issues in a case, then there is no final order."). Accordingly, we dismiss the appeal for lack of jurisdiction and remand the case to the district court to consider O'Briant's Section 1981 claims. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*DISMISSED AND REMANDED*

RECEIVED
U.S. MARSHALS

...t of Approval for the United States?

Re: Constitution & Laws

Laws,

... Virginia 23219



H. Philip U. Burns
4/33 River Street
Baltimore, Md 31324

United States Po
Fair B. Paru
1102 East Main
Suite 501
Richmond, Va